1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   JOHN J. LULEJIAN (State Bar No. 186783)
4  Assistant United States Attorney
   Violent & Organized Crime Section
5      1500 United States Courthouse
       312 North Spring Street
6      Los Angeles, California  90012
       Telephone:  (213) 894-8603
7      Facsimile:  (213) 894-3713
       E-mail:  John.Lulejian@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10

11                  UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,      ) CR No. 07-1049-VBF
                                   )
14                 Plaintiff,      ) GOVERNMENT'S OBJECTIONS AND
                                   ) POSITION RE: PRESENTENCE
15            v.                   ) INVESTIGATIVE REPORT AND
                                   ) SENTENCING FACTORS
16  CHARLES LEROY TWYMAN,          )
      et al.,                      ) DATE:  February 8, 2012
17                                 ) TIME:  1:30 p.m.
                   Defendants.     ) PLACE: Courtroom of the Hon.
18                                 )        Valerie Baker Fairbank
                                   )
19  _____)

20       Plaintiff, United States of America, through its attorney of

21  record, the United States Attorney's Office for the Central

22  District of California, hereby files the Government's Objections

23  and Position re: Presentence Report and Sentencing Factors.  The

24  government's position is based upon the concurrently-filed

25  memorandum of points and authorities, the files and records of

26  \\

27  \\

28  \\

this case, the Presentence Investigative Report, and any evidence or argument presented at the hearing in this matter.

Date: <u>January 25, 2012</u>

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

<u>/s John J. Lulejian</u>
JOHN J. LULEJIAN
Assistant United States Attorney
Violent & Organized Crime Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## TABLE OF CONTENTS

I.      INTRODUCTION AND RECOMMENDATION     . . . . . . . . . . .   1

II.     FACTUAL BACKGROUND   . . . . . . . . . . . . . . .   2

III.    OBJECTIONS TO PRESENTENCE REPORT
        AND RECOMMENDATION LETTER   . . . . . . . . . .   3

IV.     SENTENCING GUIDELINES CALCULATION   . . . . . . . . .   3

V.      CONSIDERATION OF THE SECTION 3553 FACTORS
        AFTER BOOKER   . . . . . . . . . . . . . . . . .   4

        A.   Sentencing Guidelines After BOOKER   . . . . . . .   4

        B.   Consideration of the 3553(a) Factors   . . . . . .   5

             1.   Nature and Circumstances of the
                  Offense and History and Characteristics
                  of Defendant   . . . . . . . . . . . . . .   6

             2.   Need to Reflect the Seriousness
                  of the Offenses   . . . . . . . . . . . . .   8

             3.   Deterrence of Criminal Conduct   . . . . . . .   9

             4.   Need to Protect the Public   . . . . . . . .   10

             5.   Need to Provide Defendant with Education   . .   10

             6.   Need to Avoid Unwarranted
                  Disparity in Sentences   . . . . . . . . . .   10

VI.     WAIVER OF APPEAL   . . . . . . . . . . . . . . .   11

VII.    CONCLUSION   . . . . . . . . . . . . . . . . .   12

1

# TABLE OF AUTHORITIES

2 <u>CASES</u>

3 <u>United States v. Booker</u>,
         543 U.S. 220 (2005)  . . . . . . . . . . . . . 4

4

5 <u>United States v. Cantrell</u>,
         433 F.3d 1269 (9th Cir. 2006)  . . . . . . . . . 4, 5

6

7 <u>United States v. Carty</u>,
         520 F.3d 984 (9th Cir. 2008)  . . . . . . . . . 5

8

9 <u>United States v. Guerrero-Velasquez</u>,
         434 F.3d 1193 (9th Cir. 2006)  . . . . . . . .  10-11

10

11 <u>United States v. Hunt</u>,
         459 F.3d 1180 (11th Cir. 2006)  . . . . . . . . . 11

12

13 <u>United States v. Nichols</u>,
         464 F.3d 1117  (9th Cir. 2006)  . . . . . . . . . 6

14

15 <u>United States v. Smith</u>,
         445 F.3d 1 (1st Cir. 2006) . . . . . . . . . . 11

16

17 <u>United States v. Wilson</u>,
         350 F. Supp. 2d 910 (D. Utah 2005)  . . . . . . . . 10

18

19 <u>STATUTES</u>

20 18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . 5

21 21 U.S.C. § 841(a) . . . . . . . . . . . . . . . 1

22 21 U.S.C. § 841(b)(1)(B) . . . . . . . . . . . . . 1

23

24 <u>UNITED STATES SENTENCING GUIDELINES</u>

25 U.S.S.G. § 3E1.1 (2011) . . . . . . . . . . . . . 3

26 U.S.S.G. § 5A (2011) . . . . . . . . . . . . . . 4

27 U.S.S.G. § 4B1.1(b)(2) . . . . . . . . . . . . . 3

28

1

I

2

## INTRODUCTION AND RECOMMENDATION

3       Defendant Kenneth Bernard Riley is before the Court for

4  sentencing after pleading guilty to a single-count Superseding

5  Information in United States v. Charles Leroy Twyman, et al.,

6  Case No. CR No. 07-1049-VBF, which charges Distribution of

7  Cocaine Base, in violation of Title 21, United States Code,

8  Sections 841(a)(1) and (b)(1)(B)(iii).

9       As discussed in detail below, defendant, believed to be one

10 of the founders of the Crenshaw Mafia Gangster Bloods violent

11 criminal street gang ("Gangster Bloods"), is a career offender

12 with an offense level is 31 and a criminal history category

13 is VI, resulting in an advisory Sentencing Guidelines range of

14 188 to 235 months imprisonment, 60 months of which is mandatory.[1]

15 Defendant requests that the Court sentence him to 72 months based

16 on his physical health.  In light of defendant's medical

17 condition, the United States Probation Office ("Probation

18 Office") requests that the Court sentence defendant to 120 months

19 imprisonment.  The government disagrees with the Probation Office

20 and defendant, and for the reasons set forth below, respectfully

21 recommends a low-end sentence of 188 months imprisonment, a five-

22 year term of supervised release, no fine, and a $100 special

23

24 _____

25       [1]   Defendant was charged prior to the Fair Sentencing Act
   of 2010 ("FSA"), but did not plead guilty until after the FSA
26 went into effect.  Because the amount of cocaine base charged in
   the single-count information is more than 28 grams, but less than
27 280 grams, defendant no longer faces a 10-year minimum mandatory
   sentence, but instead, a 5-year minimum mandatory sentence.

28                                    1

1 | assessment.

2 | II

3 | FACTUAL BACKGROUND[2]

4 | On September 17, 2005, defendant met with a confidential
5 | government source ("CS") and agreed to sell the CS nine ounces of
6 | cocaine base, in the form of crack cocaine ("crack cocaine"), for
7 | $5,625.  (See PSR, ¶ 19.)  Defendant explained to the CS that the
8 | cocaine (powder) would cost $4,500 and the price of converting
9 | the cocaine powder into crack cocaine was $125 per ounce, or
10 | $1,125 total.  (See PSR, ¶ 19.)  Defendant accepted an initial
11 | payment of $4,500 from the CS, which defendant used to obtain
12 | approximately nine ounces of cocaine powder from his
13 | co-defendant.  (See PSR, ¶ 19.)  Defendant then converted the
14 | cocaine powder into approximately nine ounces of crack cocaine.
15 | (See PSR, ¶ 20.)  Defendant then met the CS, and in exchange for
16 | the remaining $1,125, provided the CS with approximately 248.5
17 | grams of crack cocaine, which was hidden in a Godiva chocolates
18 | box.  (See PSR, ¶ 20.)

19 | In addition to the above conduct, on June 20, 2005,
20 | defendant distributed approximately 143.7 grams of a mixture and
21 | substance containing a detectable amount of crack cocaine.[3]
22 | (See PSR, ¶ 22.)  Also, beginning on or about February 8, 2006,
23 | and continuing until or about February 9, 2006, defendant, Joseph
24 | Carter ("Carter"), his co-defendant, and others conspired to

25 | _____

26 | [2]    Except as otherwise noted, pursuant to
Rule 32(i)(3)(A), the government respectfully requests the Court
27 | accept the "undisputed portion[s] of the presentence report as a
finding of fact."

28 | [3]    This conduct was charged in United States v. Kenneth
Bernard Riley, Case No. CR 07-1075-VBF.

1 | possess with intent to distribute and to distribute approximately
2 | eight ounces (226.8 grams) of cocaine powder.[4]  (<u>See</u> PSR, ¶ 23.)
3 | In furtherance of the conspiracy, on February 9, 2006, defendant
4 | and Carter communicated by telephone, and using coded language,
5 | arranged for the sale of the cocaine powder to another person
6 | through defendant's associate.  (<u>See</u> PSR, ¶ 24.)

III

**OBJECTIONS TO PRESENTENCE REPORT AND RECOMMENDATION LETTER**

9 |      The Probation Office correctly determined that defendant was
10 | a career offender and calculated the correct offense level,
11 | criminal history, and advisory Sentencing Guidelines range.
12 | However, for the reasons set forth below, the government
13 | respectfully disagrees with the Probation Office's recommendation
14 | of a five-level downward departure and sentence of 120 months
15 | imprisonment.  The government believes that given the facts of
16 | this case, including defendant's medical condition, a low-end
17 | guidelines sentence of 188 months is appropriate.

IV

**SENTENCING GUIDELINES CALCULATION**

20 |      Except as detailed above, the government does not object to
21 | the Probation Office's calculation of defendant's offense level.
22 | Thus, the resulting offense level calculation is as follows:

23 |      Base Offense Level  :    34    [U.S.S.G. § 4B1.1(b)(2)

24 |      (Acceptance of
       Responsibility):        <u>-3</u>    [U.S.S.G. § 3E1.1]

25 |      Offense Level:          31

---

[4]      This conduct was charged in <u>United States v. Kenneth Bernard Riley, et al.</u>, Case No. CR 07-1141-VBF.

3

1    The government also concurs with the Probation Office's
2  conclusion that a role adjustment is not appropriate. (<u>See</u>
3  PSR ¶¶ 38-39.)  Accordingly, the government respectfully requests
4  that the Court find that the appropriate offense level for
5  defendant is 31.

6    The government concurs with the criminal history calculation
7  provided in the Presentence Investigation Report ("PSR") which
8  places defendant in criminal history category VI. (<u>See</u> PSR
9  ¶ 73.)  Based on an offense level of 31 and criminal history
10 category of VI, defendant's guidelines range is 188 to 235
11 months.  <u>See</u> U.S.S.G. § 5A.

12                                  V

13       CONSIDERATION OF THE SECTION 3553 FACTORS AFTER <u>BOOKER</u>
14 A.   <u>Sentencing Guidelines After Booker</u>

15    Under the Sentencing Reform Act as modified by <u>United States</u>
16 <u>v. Booker</u>, 543 U.S. 220 (2005), this Court must analyze and
17 consider the Guideline factors before imposing sentences in
18 federal criminal cases.  <u>See United States v. Booker</u>, 543 U.S.
19 220, 259, 261 (2005) (noting that Sentencing Reform Act
20 "nonetheless requires judges to take account of the Guidelines
21 together with other sentencing goals"); <u>see also United States v.</u>
22 <u>Cantrell</u>, 433 F.3d 1269, 1279 (9th Cir. 2006) (noting that the
23 "[c]ontinuing duty of district courts to consult the Guidelines
24 is statutory").  In <u>United States v. Carty</u>, 520 F.3d 984 (9th
25 Cir. 2008) (en banc), the United States Court of Appeals for the
26 Ninth Circuit declined to adopt a presumption of reasonableness
27 for appellate review of within-Guideline sentences, but it stated
28 that "normally" a Guideline sentence will not be found

1 unreasonable on appeal.  See Carty, 520 F.3d at 988.

2    In Carty, the Ninth Circuit went on to provide a detailed

3 framework for federal sentencing.  This Court must begin by

4 determining the applicable guideline range - this range is a

5 "starting point" and "initial benchmark."  Carty, 520 F.3d at

6 991.  This Court must then ensure that the parties have an

7 opportunity to argue for the sentence that they believe is

8 appropriate.  See id.  This Court must also consider Section

9 3553(a) in conjunction with these arguments.  See id.  This Court

10 cannot presume that a Guideline sentence is reasonable and cannot

11 give the Guidelines more or less weight than the other 3553(a)

12 factors.  See id.  The sentencing must be an "individualized"

13 determination.  See id.  Importantly, in deciding the extent of

14 any proposed departure or variance from the Guideline range, this

15 Court must consider whether the justification is sufficiently

16 compelling to support the degree of the variance.  See id.  The

17 greater the variance, the more persuasive the justification

18 should be "because other values reflected in Section 3553(a) -

19 such as, for example, unwarranted disparity" counsel against the

20 variance.  See id. at 991-92.  Also importantly, this Court must

21 provide enough of an explanation to enable meaningful appellate

22 review, and this will vary depending upon the complexity of the

23 case.  See id. at 992.

24 B.   Consideration of the 3553(a) Factors

25    The applicable Sentencing Guidelines range, while not

26 definitive, provides the starting point for finding a reasonable

27 sentence and must then be considered with the factors set forth

28 in Section 3553(a).  See Cantrell, 433 F.3d at 1279.  "To comply

1 with the requirements of <u>Booker</u>, the district court must have

2 sufficiently considered the Guidelines as well as the other

3 factors listed in § 3553(a).  This requirement does not

4 necessitate a specific articulation of each factor separately,

5 but rather a showing that the district court consider the

6 statutorily-designated factors in imposing a sentence." <u>United</u>

7 <u>States v. Nichols</u>, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting

8 <u>United States v. Knows His Gun</u>, 438 F.3d 913, 918 (9th

9 Cir. 2006)).  In the preceding and following pages of this brief,

10 the government has detailed the facts it believes are relevant to

11 defendant's sentencing.

12    1.   **Nature and Circumstances of the Offense and History and**
         **Characteristics of Defendant**

13

14        As detailed above and in the PSR, defendant's conviction was

15 the result of his dealings with Twyman.  Defendant also is

16 responsible for two other drug-trafficking crimes involving crack

17 and powder cocaine.  By engaging in this illicit conduct,

18 defendant trafficked in two dangerous drugs on three separate

19 instances during a six-month period.  (<u>See</u> Recommendation Letter,

20 dated 10/17/2011, at 3.)

21        Defendant's criminal history includes the following felony

22 convictions:

23        (a)   a 1987 conviction for Conspiracy to Commit Crime

24 of Sales of Controlled Substances, in violation of Section 182.1

25 of the California Penal Code, for which the Los Angeles Superior

26 Court sentenced defendant to a 5-year prison term (<u>see</u> PSR ¶ 55);

27        (b)   a 1990 conviction for Felon in Possession of a

28 Firearm, in violation of Section 12021(a) of the California Penal

6

1  Code, for which the Los Angeles Superior Court sentenced

2  defendant to a 16-month prison term (see PSR ¶ 59);

3          (c)  a 1997 conviction for Possession of a Controlled

4  substance for Sale, in violation of Section 11351 of the

5  California Health & Safety Code, for which the Riverside Superior

6  Court sentenced him to a 3-year prison term (see PSR ¶ 68).

7  Based on the above 1987 and 1997 drug convictions, defendant

8  qualifies as a career offender.

9          Defendant's criminal history reveals a number of misdemeanor

10  convictions, the most serious of which is his 1992 conviction for

11  Corporal Injury on Spouse, in violation of Section 273.5 of the

12  California Penal Code, for which defendant received a sentence of

13  two years probation and a fine.  (See PSR ¶¶ 53-54, 62-63, 65-

14  66.)  In addition, his criminal history reveals many arrests for

15  crimes ranging from drugs to murder.  (See PSR ¶¶ 79-88.)

16          What is not obvious from a quick review of defendant's

17  criminal history is that he has been involved with the Crenshaw

18  Mafia for most of his life.  In fact, as set forth above, law

19  enforcement believes that defendant was one of the founding

20  members of the Crenshaw Mafia, the violent criminal street gang

21  that was the subject of this long-term investigation.

22          Notwithstanding the foregoing, he government recognizes that

23  defendant is suffering from a medical condition that will require

24  the Bureau of Prisons to care for him during his sentence.  The

25  government also is aware of the health problems defendant has

26  faced to date.  While the Sentencing Guidelines provide that an

27  "extraordinary physical impairment may be a reason to depart

28  downward," see U.S.S.G. § 5H1.4 (2011), in this case, a departure

7

1  from the guidelines in not justified for the following reasons.

2       First, the government took defendant's medical condition

3  into account when it crafted his plea.  As part of the plea, the

4  government agreed to dismiss the Information re: Prior Conviction

5  for Felony Drug Offense, pursuant to Title 21, United States

6  Code, Section 851, filed by the government in 2010.  Without the

7  dismissal of this information, defendant would be facing a 120

8  month mandatory minimum sentence and an advisory sentencing range

9  of 262 to 327 months imprisonment.  By agreeing to dismiss the

10 sentencing enhancement, the sentencing guidelines range decreased

11 by over seven years and the mandatory minimum sentence was

12 halved.  While the government normally would seek a mid-range to

13 high-end sentence for a founding member of a violent street gang

14 and career offender who was involved in multiple drug-trafficking

15 cases, given the unique facts of this case, the government only

16 is seeking a low-end sentence of 188 months imprisonment.[5]

17      Accordingly, a sentence of 188 months imprisonment reflects

18 the nature and circumstances of the offense and the history and

19 characteristics of defendant.

20      **2.   Need to Reflect the Seriousness of the Offenses**

21      For the reasons set forth above, defendant's participation

---

23      [5]    Defendant should be able to receive proper medical
treatment through the Bureau of Prisons:

24      The BOP is well-equipped to monitor and treat most
25      medical problems, including those [of defendant].
        Should his condition worsen and his health care needs
26      exceed those services available in a typical
        institution, then he may be transferred to a medical
27      referral center.  If a BOP facility cannot adequately
        treat his conditions, he will be sent to a community
28      hospital under contract with the BOP.

(Recommendation Letter, at 4-5.)

in the Crenshaw Mafia and the distribution of cocaine base and powder on multiple occasions is serious.  Thus, a sentence of 188 months imprisonment reflects the seriousness of the offense.

3.    Deterrence of Criminal Conduct

Defendant has been to prison twice for his drug trafficking activities and once for carrying a firearm when he was prohibited from doing so.  He also received a sentence of probation for corporal injury on a spouse.  Yet, defendant did not change his behavior.  As the Probation Office recognized, "[i]n light of the instant offense, it is evident that [defendant] was undeterred by his prior prison sentences."  (Recommendation Letter, at 4.)  One must question whether anything less than a lengthy prison term will deter defendant from engaging in criminal conduct.

What is evident is that defendant is at a crossroad in his life.  He is no longer a young man hustling on the streets of Los Angeles with other gang members, but a 49-year old man facing the prospect of a lengthy prison sentence.  He also must account for the number of lives, including his own, that he ruined when he decided to found the Crenshaw Mafia.  While defendant's medical condition may be a factor in his decision as to how to spend the rest of his life.  He must determine whether he wants to die alone in prison or whether he wants to renounce the Crenshaw Mafia and the lifestyle of a drug trafficker.

A low-end sentence of 188 months imprisonment will be a significant sentence to defendant.  The government hopes that a 188-month sentence will adequately deter defendant and others from future criminal conduct.

### 4.   Need to Protect the Public

The public needs to be protected from individuals, like defendant, who are willing to participate in gang life and traffic drugs such as cocaine base and powder.  A sentence of 188 months imprisonment will protect the public and deter defendant from future criminal conduct.

### 5.   Need to Provide Defendant with Education

The need to provide a defendant with education and vocational skills, while important in most contexts, must be placed in a subordinate position to the important considerations of deterrence, protection of the public and the need for the sentence to reflect the seriousness of the offense.  See United States v. Wilson, 350 F. Supp. 2d 910, 921-22 (D. Utah 2005) (noting that legislative history of Sentencing Reform Act demonstrates that Congress intended to place rehabilitation as secondary consideration where serious crimes involved). Defendant will have access to many programs in the prison system to which he can avail himself.  Neither the presence nor absence of any further educational programs should weigh heavily in this Court's sentencing determination.

### 6.   Need to Avoid Unwarranted Disparity in Sentences

Finally, a sentence in accordance with the Guidelines also properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6). Numerous courts have recognized that the guidelines range serves as a bulwark against sentencing disparity.  See United States v. Guerrero-Velasquez, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006)

(recognizing that guidelines "help to maintain uniformity in
sentencing throughout the country"); <u>United States v. Hunt</u>, 459
F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an
indispensable tool in helping courts achieve Congress's mandate
to consider 'the need to avoid unwarranted sentence disparities'
among similarly situated defendants.") (quoting 18 U.S.C.
§ 3553(a)(6)); <u>United States v. Smith</u>, 445 F.3d 1, 7 (1st Cir.
2006) (noting that "the guideline range . . . is the principal
means of complying with" the goal of avoiding unwarranted
sentencing disparity).

In this case, the government recommends a sentence at the
low-end of the applicable Sentencing Guidelines range.  Thus, by
imposing a sentence of 188 months, the Court minimizes the chance
of sentencing disparity.

VI

WAIVER OF APPEAL

In him plea agreement, defendant, with few exceptions,
waived his right to appeal his sentence.  (<u>See</u> Plea Agreement,
¶¶ 20-21.)  Accordingly, if the Court chooses to advise defendant
of him limited appellate right, the government respectfully
requests that the Court note on the record that defendant has
waived most of him appellate rights.

\\
\\
\\
\\
\\
\\

1

## VII

2

## CONCLUSION

3        For the reasons set forth above, the government respectfully

4   requests that the Court sentence defendant to a sentence of 188

5   months imprisonment, followed by a five-year term of supervised

6   release, no fine, and a $100 special assessment.

7

8   Date: January 25, 2012            ANDRÉ BIROTTE JR.
                                       United States Attorney

9

                                       ROBERT E. DUGDALE
10                                     Assistant United States Attorney
                                       Chief, Criminal Division

11

                                       /s John J. Lulejian
12                                     JOHN J. LULEJIAN
                                       Assistant United States Attorney
13                                     Violent & Organized Crime Section

14                                          Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i